UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISON

| | |
|---|---|
| VINCENT BRUCE,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL SAYRE, et. al.,<br><br>    Defendants. | Case No. 14-cv-4298-NJV (PR)<br><br>**ORDER GRANTING DEFENDANTS'**<br>**MOTION FOR SUMMARY JUDGMENT**<br><br>Docket No. 36 |

    Plaintiff, a state prisoner, proceeds with a pro se civil rights complaint under 42 U.S.C. § 1983. Plaintiff alleges that defendants, Dr. Ikegbu and Dr. Adam, provided inadequate medical care for his shoulder and back pain. On January 13, 2017, Defendants filed a motion for summary judgment. (Doc. 36.) Defendants had previously filed a motion for summary judgment on November 10, 2015. (Doc. 22.) Plaintiff did not file an opposition to the first motion for summary judgment and instead sought additional discovery. On July 5, 2016, the court ordered additional discovery to be provided to plaintiff. (Doc. 32.) On August 15, 2016, plaintiff sought an additional 30 days to file an opposition after receiving the additional discovery. (Doc. 33.) Because plaintiff had received additional discovery, the court terminated the motion for summary judgment without prejudice and ordered defendants to refile it after several months so that plaintiff would have sufficient time to prepare his opposition. (Docs. 34, 35.) It was refiled on January 13, 2017. (Doc. 36.) On February 9, 2017, plaintiff requested an additional 90 days to file an opposition because he had approaching deadlines in other cases. (Doc. 43.) The court denied the extension in part and provided plaintiff an additional 28 days to file an opposition. (Doc. 44.) The court noted that plaintiff had had more than 14 months to review the motion for summary

judgment.[1] Several months have passed since plaintiff was provided the extension, and he has not filled an opposition or otherwise communicated with the court. The court will still look to the merits of the motion for summary judgment and for the reasons set forth below the motion is granted.

## DISCUSSION

**Legal Standard**

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id*. The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See id*. at 324 (citing Fed. R. Civ. P. 56(e) (amended 2010)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

---

[1] The original and refiled motions for summary judgment are nearly identical.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *Id*. at 1059. A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id*. The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment. *Id*. at 1059-60.

A prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." *Id*. If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002). "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

**Facts**

Despite plaintiff's failure to file an opposition, the court has looked to plaintiff's verified amended complaint. The following facts are undisputed, unless otherwise noted.

3

**Dr. Ikegbu**

Dr. Ikegbu first treated plaintiff on July 18, 2011. Motion for Summary Judgment ("MSJ") Ikegbu Decl. at 2. She diagnosed plaintiff with chronic left shoulder pain, most likely due to rotator cuff strains, and found a full range of motion without tenderness. *Id*. Plaintiff did not complain of chronic back pain. *Id*.

On July 28, 2011, another doctor provided a cardiology consultation for plaintiff, who did not complain of shoulder or back pain. *Id*. On August 9, 2011, a nurse treated plaintiff for shoulder and hip pain, prescribing Ibuprofen, 600 mg, for 60 days. *Id*. On September 14, 2011, Dr. Ikegbu administered a steroid injection of Lidocaine to plaintiff's right hip to address hip pain. *Id*. at 3. Plaintiff did not complain of back pain and noted low level shoulder pain of 2 out of 10. *Id*.

Plaintiff was treated on October 12, October 26 and November 4, 2011, for other medical problems, and he did not complain of shoulder or back pain.

On November 23, 2011, plaintiff complained of shoulder pain and noted that the earlier steroid injection helped with pain. *Id*. He said the pain was 5 out of 10 in his left shoulder. He did not describe any back pain. *Id*.

On December 7, 2011, Dr. Ikegbu treated plaintiff for shoulder pain that plaintiff described as a 3 out of 10. Dr. Ikegbu thought the pain was likely due to osteoarthritis of the acromioclavicular/glenohumeral joint. She prescribed x-rays, continued stretching, continued Ibuprofen, consideration of a steroid injection and further follow-up pending the radiology report. *Id*.

On December 16, 2011, an outside radiologist evaluated the x-rays of plaintiff's left shoulder that were taken on December 13, 2011. The doctor found no evidence of fracture or dislocation and noted that no degenerative changes were observed. The doctor concluded that the x-rays did not show there was anything orthopedically wrong with the shoulder. *Id*.

On January 18, February 17, March 7, April 9 and April 10, 2012, plaintiff was treated by medical staff who provided him with additional Ibuprofen and information about yoga and back exercises. *Id*. at 4; MSJ Exs. L, M, N.

4

Plaintiff filed an inmate appeal concerning inadequate treatment for pain in his shoulders. MSJ, Alweiss Decl. at 2. On May 21, 2012, Dr. Ikegbu interviewed plaintiff concerning the appeal. Ikegbu Decl. at 4. She noted that his left shoulder x-ray from December 13, 2011, and a right shoulder x-ray from February 20, 2008, were both normal and that he should continue taking 600 mg of Ibuprofen. *Id*. Dr. Ikegbu denied plaintiff's request for an orthopedic referral because he did not present with any surgically correctable disorder, but she did request a new x-ray for his right shoulder and an accommodation for double-cuff handcuffs. *Id*. at 5. She denied physical therapy because plaintiff had good power, muscle tone and range of motion and physical therapy would not provide any benefit. *Id*. She denied hot and cold packs because they are beneficial for acute injury, not chronic pain. *Id*.

On May 25, 2012, an outside radiologist evaluated plaintiff's right shoulder x-ray. The doctor concluded that there was minimal degenerative change of the acromioclavicular joint and no significant changes of the glenohumeral joint. *Id*. Plaintiff was regularly seen by medical staff for the remainder of 2012 and 2013 during which time he was continually provided Ibuprofen 600 mg. *Id*. at 5-6. At a February 21, 2013, exam, medical staff noted that while plaintiff had tenderness, he had normal range of motion and minimal osteoarthritis. *Id*. at 6. There was no sign of impingement or tear during his back exam. *Id*.

Plaintiff was treated on October 21, 2013, when he reported that his shoulders were stiff and sore, stretching was mildly effective and Ibuprofen worked well for the pain. *Id*. at 7. He denied any numbness or tingling. *Id*. Dr. Ikegbu treated plaintiff on November 6, 2013. Plaintiff did not complain of chronic back pain but did note chronic deep pain in his left shoulder with some clicking. He was able to perform stretches and had occasional relief with Ibuprofen. *Id*. Dr. Ikegbu found no loss of muscle bulk and full range of motion, though there was mild tenderness with clicking. *Id*. at 8. She continued the prescription for Ibuprofen 600 mg and advised that he continue stretching exercises. This was plaintiff's last visit with Dr. Ikegbu. *Id*.

**Dr. Adam**

Dr. Adam became plaintiff's primary care physician in February 2014. Adam Decl. at 2. On February 20, 2014, plaintiff was treated for lower back pain. He did not have any abnormalities, there was no pain upon palpatation and he had full range of motion. He requested more Ibuprofen, which was provided. *Id*. Dr. Adam treated plaintiff on March 21, 2014, for hypertension; plaintiff did not complain of shoulder or back pain. *Id*.

Plaintiff was treated by other medical staff in March and April 2014 for his shoulder and back pain. *Id*. at 2-3. Dr. Adam treated him on May 9, 2014, for shoulder and back pain. *Id*. at 4. Dr. Adam noted that earlier plaintiff's pain had gone away and only returned after plaintiff started chest/shoulder exercises. Dr. Adam diagnosed likely rotator cuff tendinopathy in the left shoulder, advised he cut back on shoulder exercises, and use a warm towel and cold compress after exercising and increased his Ibuprofen dosage, which had been reduced. *Id*. Plaintiff was treated by other medical staff later in May and in June 2014. *Id*.

On August 11, 2014, Dr. Adam reviewed plaintiff's treatment. Dr. Adam concluded that plaintiff's continued back and shoulder pain was a result of his chest and shoulder exercises and that his use of Ibuprofen would not make the conditions go away. *Id*. Dr. Adam treated plaintiff again on September 16, 2014 for left shoulder pain and diagnosed bicipetal tendinitis with shoulder osteoarthritis and possible involvement of teres minor. Dr. Adam prescribed two sessions of physical therapy to establish an exercise plan. Dr. Adam also advised plaintiff against movements that cause pain and not to use the Ibuprofen to mask the pain. *Id*. at 4-5. Plaintiff began the physical therapy the week of September 23, 2014. *Id*. He filed this lawsuit on September 24, 2014. (Doc. 1.)

**Analysis**

It is undisputed that defendants provided plaintiff with a great deal of medical care during the relevant time. Plaintiff was seen by defendants or other medical staff several times a month for more than three years. Assuming that plaintiff's shoulder and back pain qualifies as a serious medical need, defendants were not deliberately indifferent in the treatment they provided.

Defendants have met their burden in showing that there is no genuine dispute of material fact and they are entitled to summary judgment.

Defendants regularly examined and treated plaintiff, providing pain medication, x-rays and consultations with radiologists. Plaintiff argues that he should have been referred to a shoulder specialist, yet the x-rays indicated there was nothing orthopedically wrong with the shoulder. Plaintiff also sought hot and cold packs, yet that remedy is not recommended for chronic pain. To the extent that plaintiff disagrees with these medical decisions, this difference of opinion does not demonstrate deliberate indifference. *Franklin*, 662 F.2d at 1344.

Defendants noted that plaintiff had full range of motion and good muscle tone and power. To treat his reported pain, plaintiff was continually prescribed pain medication. Dr. Adam concluded that plaintiff's pain was being caused by his chest and shoulder exercises and provided physical therapy to devise a new exercise plan. It is unclear if plaintiff followed the new plan or continued to perform chest and shoulder exercises that were causing him pain.

Defendants have met their burden in showing that there is no genuine dispute of material fact and they are entitled to summary judgment. Plaintiff has failed to meet his burden in demonstrating that defendants were aware of a substantial risk of serious harm and disregarded that risk by failing to take reasonable steps. The undisputed facts show that defendants took reasonable steps to treat plaintiff's medical needs and they are entitled to summary judgment.

## CONCLUSION

1. Defendants' motion for summary judgment (Docket No. 36) is **GRANTED**.

2. The Clerk shall terminate all pending motions, enter judgment, and close the file.

**IT IS SO ORDERED.**

Dated: July 10, 2017

_____
NANDOR J. VADAS
United States Magistrate Judge